WARD TEMPLEMAN, ASSIGNEE, v. HUTCHINGS, SEALY & CO.

Decided June 1, 1900.

**Assignment for Creditors—Bank Offsetting Assignor's Deposit Against Its Debt.**

A bank holding a debt against an insolvent who makes a statutory assignment has the right to appropriate a deposit with it of the insolvent to the liquidation of its debt, since it is entitled to any defense that would have been good against the assignor.

APPEAL from Galveston. Tried below before E. D. CAVIN.

*Kearby & Muse,* for appellant.

*Terry, Ballinger, Smith & Lee,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Ward Templeman as assignee of Joseph and T. A. Cook to recover of Hutchings, Sealy & Co., appellees, the sum of $5932.37, which was alleged to have been held on deposit by appellees to the credit of his assignor at the date of the deed of assignment. Trial before the court without a jury resulted in a judgment in favor of appellant, the assignee, for $1436.66 and costs, from which he has appealed, claiming that he was entitled under the law and the facts to the entire sum sued for.

This claim is asserted on the ground that the assignors had sold to appellees certain notes; that the proceeds of such sale, less the discounts, were credited to them on the books of the appellees' bank; that the account stood thus when the assignors made a statutory assignment, naming appellant as assignee; that by reason of the assignment all the property and estate of the assignors vested immediately in the assignee; and that the appellees could not thereafter, for any reason, in the absence of a lien, obtain any advantage over the other creditors.

The appellees claim that the assignors had borrowed $5077.20 from them, indorsing the notes above named and placing them in their hands as collateral; that immediately upon learning of the insolvency of the assignors (which they heard on the date of the assignment) they credited out of such deposit a sum sufficient to satisfy said loan, leaving

the remainder of the deposit and notes above named subject to the order of the assignee, and that this they were entitled to do under the law.

There is no statement of facts in the record, but the trial court has set out the facts fully in his findings, which we adopt without setting them out at length here. It is necessary, however, for the purposes of this opinion to state the facts briefly: Hutchings, Sealy & Co. were engaged in the private banking business at Galveston and had been so engaged for a number of years. Joseph and T. A. Cook were engaged in the private banking business at Navasota, Texas, and had been so engaged for a number of years under the firm name of E. F. Baxter. As such they did business with the Galveston concern, and large sums of money and transactions passed between the two banks during the course of their dealings with each other.

Prior to the execution of the deed of assignment by the Cooks they sent to appellees three promissory notes,—one of R. R. Anderson for $2543.75, one of T. W. & R. H. Wilson for $2051.67, and a note of D. E. Kelly for $550, aggregating $5145.52. Accompanying them was a letter requesting appellees to discount them and place the net proceeds to the credit of the Cooks in their deposit account. A discount of $68.22 was charged, and the sum remaining, viz., $5077.20, was placed to their credit as requested, and the notes were charged to the Cooks in the bills receivable accounts. All of these notes were dated prior to November 22, 1897, the date of the assignment, and were due thereafter. They were payable to the "Baxter Bank," and were indorsed in blank by the payees. After the assignment, and after the amount advanced on these notes had been discharged by the appropriation by appellees out of said deposits of a sufficient sum for the purpose, the three notes were sent by them to a national bank at Navasota for collection. The Kelly note was collected and the proceeds remitted to appellees, which amount was added to the deposit. The Anderson and Wilson notes were returned uncollected, the makers being insolvent.

The assignee demanded of appellees the entire amount of the deposit, but payment of any sum was refused because a writ of garnishment had been served on appellees at the suit of Moody & Co., and they held the entire sum to await the result of the garnishment proceedings. On the —— day of —— the garnishment suit was dismissed by the plaintiff in the writ. Thereafter no further demand was made on appellees by the assignee, nor did they at any time prior to the trial make a tender to appellant of the amount which appellees concede to have been due him, but appellees have been at all times ready, able, and willing to pay the amount due and to surrender to the assignee the two uncollected notes.

Subsequent to the discounting of the notes, and prior to the assignment, the Cooks had made several additional deposits with appellees, against which they had also drawn from time to time, so that the trial court found the balance due appellant (after allowing the offset of appellees' debt), to be $1436.66, which included legal interest from the

date of the release of the garnishment. On the trial the appellees tendered to appellant $1326.66, and the two uncollected notes, in full of his claim, but this tender was refused. It does not appear from the record that the sum tendered was actually paid into the registry of the court.

The trial court found, in effect, that the discount of the notes, construed in the light of past transactions between the parties and the circumstances attending it, amounted to no more than a loan of money which for convenience was placed to the credit of the borrower as a deposit subject to draft, and that the notes were placed with appellees merely as collateral. This conclusion is assailed, but in the absence of a statement of facts can not be reviewed. If, however, it was not in fact a loan, the Cooks were nevertheless liable as indorsers, and the makers having been shown to be insolvent, the indorsers could have been held directly liable. So the result could not be influenced by the distinction sought to be drawn.

The assignments of error present the question, "May a bank holding a debt against an insolvent who makes a statutory assignment, appropriate a deposit of the insolvent to the liquidation of the debt?" While it is true that the assignee becomes, by virtue of his trust, entitled to all the assets of the assignor, yet the act of insolvency can not destroy valid defenses which might have been urged against the insolvent. The assignee acquires his title without parting with value. Had the assignor sued appellees for the amount of his deposit, it would not have been gravely contended that appellees could not have offset their debt against the demand for the amount due by reason of the deposit. When one makes a general deposit in a bank, it is not contemplated that the identical money shall be returned, but the relation of debtor and creditor arises between the parties. Van Winkle Gin Co. v. Citizens Bank, 89 Texas, 153, and authorities cited.

The right of the bank to offset its debt against the liability growing out of the deposit does not depend on the existence of a lien in its favor on the deposited funds, but on the principle that the balance due between the parties is thus ascertained. If the deposit exceed the debt, the assignee recovers the difference. If the debt exceed the deposit, the bank may present to the assignee for allowance the amount of the debt remaining unpaid. The right of offset in such a case is not now regarded as an open question. Mutual obligations cancel each other, and the insolvency of either party will make no difference in the adjustment of their mutual accounts. Fry v. Houston, 6 Texas Civ. App., 710; Yardly v. Clothier, 51 Fed. Rep., 506.

In Van Winkle Gin Company v. Citizens Bank, supra, it is held that as soon as the liability of an indorser is fixed, the indorsee may at any time thereafter apply to the payment of the indorser's liability any of his money coming into the hands of the indorsee in the regular course of business. It is needless to multiply authorities or extend this discussion further. The authorities cited by appellant have been found

upon inspection not to be in conflict with the doctrine here announced. The appellees' cross-assignments have been considered, and we are of opinion they are without merit.

The judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.